STATE OF NORTH CAROLINA v. ARCHIE PINKHAM

No. 733SC274

(Filed 9 May 1973)

**Criminal Law § 99— court's interrogation of medical witness — expression of opinion**

> In this prosecution for crime against nature, the trial court expressed an opinion in violation of G.S. 1-180 when he interrogated defendant's medical witness concerning the witness's opinion that the alleged victim had not been sexually violated per anum on the day of the alleged crime.

APPEAL by defendant from *Perry Martin, Judge,* at the 4 December 1972 Session of CARTERET Superior Court.

By indictment proper in form defendant was charged with the crime against nature on the person of Thomas Crooms, a ten year old boy. Principal evidence for the State was provided by Crooms who testified that he was penetrated by defendant twice *per anum* and once *per os.* Defendant was found guilty as charged, and from judgment imposing prison sentence of not less than seven nor more than ten years, he appealed.

*Attorney General Robert Morgan by William F. O'Connell, Assistant Attorney General, and Robert R. Reilly, Associate Attorney, for the State.*

*Bennett and McConkey, P.A., by John P. Simpson for defendant appellant.*

BRITT, Judge.

Defendant assigns as error the court's extensive questioning of defendant's witness, contending that the court violated the provisions of G.S. 1-180. The assignment of error is well taken.

The evidence showed that the alleged offense occurred around 3:00 p.m. and that Crooms was carried to the hospital that evening where he was examined around 10:30 p.m. by Dr. Van dooren, a urologist. The State did not call Dr. Van dooren as a witness but defendant did.

After describing his examination of Crooms, the witness stated that in his opinion "Thomas Crooms was not sexually

violated per anum." Following a brief cross-examination of Dr. Van dooren by the solicitor, the record reveals the following:

"(COURT: You say that in Defendant's Exhibit A, that the boy was brought in for examination with reference to sexual molesting, where did you get information from?

A. He was brought in by police who said that he was suspected by that police officer of having been sexually molested. His mother was with him and she made the same statement.

COURT: Well, you have on your medical report that you have that his penis was intact. That wouldn't have anything to do with crime against nature, whether his penis was intact, would it?

A. Well, when I examine a patient, I make a thorough examination altogether.

COURT: Well, did you make an internal examination of his rectum or colon?

A. Well, I examined his rectum and I examined his anus.

COURT: How did you examine his rectum?

A. By spreading his buttocks and looking and by inserting my finger in his rectum. There was no evidence of blood or anything.

COURT: Well, there wasn't any evidence of blood either after you took your finger out, was there?

A. No, sir.

COURT: His rectum was large enough for you to put your finger in, wasn't it?

A. Yes, sir.

COURT: Did he give any outcry?

A. He shuddered, he didn't like it.

COURT: He didn't cry out or holler?

A. No, I don't have a big finger either.

COURT: Well, now, since you say you examined him internally or in that manner, how do you arrive at your opinion, if you have an opinion, that his rectum had not been entered earlier that day?

A. I didn't say his rectum. I said his anus had not been.

COURT: How do you arrive at that opinion?

A. If that man is anywhere normal and he would molest a child his age he would tear his anus.

COURT: How did you examine his anus?

A. By spreading.

COURT: And doing what?

A. And looking, and inserting my finger. There was no blood.

COURT: You were able to insert your finger into his anus?

A. Yes, sir.

COURT: Was there any bleeding after you did this?

A. No, sir.

COURT: Then how is it that you can say that it is your opinion that he was not, you could enter his anus with your finger and you have an opinion that his anus had not been entered earlier that day with something else?

A. Because a man's penis is a lot bigger than his finger.

COURT: How do you know that?

A. Because I have seen enough of them.

COURT: Do you have an opinion as to how large an object his anus would take without tearing or bleeding?

A. A boy this age?

COURT: The boy Thomas Crooms, yes.

A. Well, by the way this boy acted, it couldn't be anything much bigger than the circumference of the finger.

I have seen quite a few molested boys in my practice and they usually tear them up, because usually a child molester is not a very gentle individual to begin with.

COURT: But, this boy appeared to be very calm to you?

A. Yes, he was.

COURT: So, really, Dr., you are not professionally in a position to say either way, whether or not this boy had been entered or partially entered, either in his anus or his mouth?

A. I cannot say about his mouth, about his anus I can.

COURT: All right, do you gentlemen have any further questions?)"

It is well established in this jurisdiction that in the trial of criminal actions the court may ask a witness questions designed to obtain a proper understanding and clarification of the witness' testimony or to bring out some fact overlooked, but the court may not ask defendant or a witness questions tending to impeach him or to cast doubt upon his credibility. 2 Strong, N. C. Index 2d, Criminal Law, § 99, p. 634; *State v. Frazier*, 278 N.C. 458, 180 S.E. 2d 128 (1971); *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24 (1968); *State v. Lowery*, 12 N.C. App. 538, 183 S.E. 2d 797 (1971). We hold that in the instant case, the court's questions tended to impeach defendant's witness or to cast doubt on his credibility, entitling defendant to a new trial. It is so ordered.

New trial.

Judges BROCK and PARKER concur.